IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

COMPLETE PROTOTYPE SERVICES, INC.,

        Plaintiff,

 v.

PENDA CORPORATION,

        Defendant.

OPINION and ORDER

23-cv-247-jdp

---

   This case arises from orders that defendant Penda Corporation placed with plaintiff Complete Prototype Services, Inc., for certain parts that would eventually be used in cars manufactured by General Motors. Complete Prototype contends that, after it had completed production of the parts that Penda ordered, Penda wrongfully refused to accept shipment or pay for the parts. It brings claims against Penda for breach of contract, conversion, unjust enrichment, and account stated. Penda moves for summary judgment on all claims. Dkt. 26.

   The fundamental reasoning behind each of Complete Prototype's four claims is that it is unfair for Penda to refuse to pay for parts that Complete Prototype manufactured at Penda's request. But the parties' contract for the parts allowed Penda to terminate the order for any undelivered goods. The parties agree that Complete Prototype had not shipped the parts when Penda canceled its order, and Complete Prototype does not challenge the enforceability of the contract. Because the parties' contract allowed Penda to terminate or modify orders before delivery, the court will grant Penda's motion for summary judgment on the breach of contract claim. The unjust enrichment claim fails because the parties had a contract for the parts. And the remaining claims fail because Complete Prototype cannot show that the elements of conversion or account stated claims are met here, so the court will grant Penda's motion.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

In 2017, defendant Penda Corporation submitted numerous purchase orders to plaintiff Complete Prototype Services, Inc. for parts that would be used for a project for General Motors that was called the High Desert program. On September 21, 2017, Penda informed Complete Prototype that General Motors had issued a "Stop Build – Stop Ship notification" for the High Desert program and directed Complete Prototype to stop building or shipping productions for any outstanding purchase orders. Dkt. 30-21, at 3–4. Penda had two purchase orders in production with Complete Prototype when it sent that email: P.O. No. 259412 and P.O. No. 260132.[1] The delivery dates for those orders were to be in October and November. Complete Prototype had begun production for the orders but had not shipped the parts for either order before it received Penda's September 21, 2017, email. The parties dispute whether Complete Prototype had completed manufacturing the parts for the two orders.

On October 24, 2017, Penda informed Complete Prototype that it wanted to cancel P.O. No. 259412 and asked Complete Prototype to confirm whether the parts for P.O. No. 259412 had been shipped. Dkt. 30-20. Complete Prototype responded, "The PO in question cannot be canceled at this time, we were told to stop building assemblies on 9/21/17 . . . and by then assemblies and details were already completed." Dkt. 35-4. (The parties do not say whether they discussed P.O. No. 260132.)

---

[1] Complete Prototype's complaint alleged that Penda owed it payment for three additional purchase orders. Dkt. 3-3. But Complete Prototype admits that Penda paid the invoices Complete Prototype sent for those purchase orders, so they are no longer at issue.

General Motors formally terminated the High Desert program and implemented an obsolescence process for suppliers to submit claims for parts that had been produced for the High Desert program. Dkt. 30-23. At some point in 2019 General Motors conducted an audit of Complete Prototype's inventory as part of the obsolescence process, the details and findings of which the parties dispute.

Complete Prototype demanded payment from Penda for the purchase orders that were outstanding when General Motors stopped the High Desert program. Penda said that any payment it made to its suppliers would depend on the result of Penda's obsolescence claim with General Motors. When Complete Prototype learned that General Motors had paid Penda, it followed up with Penda to demand payment. The parties' settlement negotiations were unsuccessful, and, in July 2022, Complete Prototype filed this lawsuit.

Complete Prototype is a Michigan corporation with its principal place of business in Michigan. Penda is a Delaware corporation with its principal place of business in Wisconsin. Complete Prototype asks the court to award more than $337,497.26 in damages. Because the parties have diverse citizenship and the amount in controversy is greater than $75,000, the court may exercise jurisdiction under 28 U.S.C. § 1332.

ANALYSIS

Complete Prototype brings four state law causes of action against Penda: (1) breach of contract; (2) conversion; (3) unjust enrichment; and (4) account stated. Dkt. 3-1. Penda moves for summary judgment on each of Complete Prototype's claims, which the parties agree are governed by Wisconsin law.

3

Summary judgment is appropriate only if there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## A. Breach of contract

The contracts at issue in this case were formed when Complete Prototype accepted the offers set out in Penda's purchase orders: Complete Prototype would produce the goods requested in the purchase order and, in exchange, Penda would pay for the manufactured goods. Purchase order Nos. 259412 and 260132 both contain the following statement:

> ALL ORDERS ARE SUBJECT TO BUYER TERMS & CONDITIONS UNLESS APPROVED BY THE BUYER IN WRITING. THE TERMS & CONDITIONS ARE SUPPLIED TO ALL SELLERS ON THE PENDA WEBSITE, BEGINNING OF EACH CALENDAR YEAR, AND ARE AVAILABLE UPON REQUEST.

Dkt. 30-5; Dkt. 30-7. Complete Prototype does not dispute that this statement incorporates all provisions of Penda's terms and conditions, and it does not challenge the enforceability of the incorporated terms and conditions.

Those terms and conditions provide that "[t]he date of payment shall be . . . computed from the later of (a) Buyer's receipt of an acceptable invoice, or (b) Buyer's receipt of the products, together with any required documents, in apparent good order." Dkt. 29-4, ¶ 2. The terms also contain a termination provision that states, "Buyer may, at any time, terminate or modify all or any part of the undelivered or unperformed portion of this order by written or telegraphic notice, or verbal notice confirmed in writing." *Id.*, ¶ 12. Taken together, these

4

provisions mean that Penda was not obligated to pay Complete Prototype until after delivery and that Penda could cancel its order any time before the goods were delivered.

Complete Prototype had not shipped any of the parts for order Nos. 259412 and 260132 when Penda directed it to stop production and shipping on any outstanding orders for the High Desert Program on September 21, 2017. Penda was not obligated to pay for undelivered goods, so its refusal to pay for completed parts that Complete Prototype had not shipped when Penda terminated the order did not breach the parties' contract.

Penda's arguments in support of its motion for summary judgment on the breach of contract claim focus entirely on the terms of the parties' contract, but Complete Prototype does not address the contract terms at all in its opposition brief. Instead, it contends that it had "successfully completed, and/or as an argument in the alternative, substantially performed the terms of the purchase orders 259412 and 260132." Dkt. 35, at 16. Complete Prototype asserts that it had produced all the parts for the orders prior to September 21, 2017, and it implicitly reasons that it is unfair for Penda to refuse to pay for the goods that it ordered once they were produced. But whether production on Penda's orders was complete (which Penda disputes) does not affect whether Penda breached the parties' contracts because the terms of the purchase order allowed Penda to terminate orders for any undelivered goods, regardless of whether production was complete.

Complete Prototype also invokes the frustration of purpose doctrine and contends that the court should deny Penda's motion for summary judgment because Penda intentionally frustrated Complete Prototype's ability to perform its contractual obligations by refusing to schedule shipping. Complete Prototype's argument appears to be that Penda should be held liable for paying for the goods that Complete Prototype manufactured because Penda

5

prevented Complete Prototype from completing its own contractual obligation to deliver the goods. Dkt. 35, at 18–19. This argument misunderstands the frustration of purpose doctrine, which is a defense that can be used to excuse a party's duty to perform contractual obligations if events outside a party's control frustrate the purpose of the contract. Penda's failure to schedule shipping could be a reason to excuse Complete Prototype from its obligation to deliver the parts it produced. But it is not a reason to hold Penda liable for breach of contract because Penda had the contractual right to cancel orders for undelivered goods.

The court will grant summary judgment to Penda on Complete Prototype's breach of contract claim because Penda terminated the parties' contract before it was obligated to pay Complete Prototype.

**B.  Conversion**

Complete Prototype contends that Penda is liable for conversion because Penda deprived Complete Prototype of the raw materials it used to make parts for Penda that Penda never paid for. Under Wisconsin law, a plaintiff must prove the following three elements to prove a claim for conversion: (1) intentional control or taking of property belonging to another, (2) without the owner's consent, (3) resulting in serious interference with the rights of the owner to possess the property. *H.A. Friend & Co. v. Pro. Stationery, Inc.*, 2006 WI App 141, ¶ 11, 294 Wis. 2d 754, 763, 720 N.W.2d 96, 100.

Complete Prototype's claim for conversion fails because Penda never took control of the raw materials that Complete Prototype voluntarily used to manufacture parts for Penda's order.[2] Complete Prototype contends that Penda "exerted control over and permanently

---

[2] Penda does not raise Wisconsin's economic loss doctrine, so the court does not consider whether the doctrine bars Complete Prototype from bringing a contact claim and a claim for

deprived [Complete Prototype] of valuable raw materials" by refusing to pay for the customized materials that it ordered. This contention seems to be based on the argument that it was unfair for Penda to ask Complete Prototype to invest in manufacturing goods that Penda did not compensate it for. But the terminated orders cannot be the basis for a conversion claim because Penda never actually controlled or took Complete Prototype's raw materials. Complete Prototype voluntarily accepted the orders and voluntarily used the raw materials in its possession to manufacture parts for Penda according to the parties' contract. Penda's decision to exercise its right to terminate the contract does not transform Complete Prototype's voluntary use of the raw materials into a taking by Penda. Because Complete Prototype cannot show that Penda wrongfully asserted control over Complete Prototype's raw materials, the court will grant summary judgment for Penda on this claim.

C.  **Unjust enrichment**

Complete Prototype contends that Penda was unjustly enriched by the raw materials and work that Complete Prototype put into order Nos. 259412 and 260132. Penda contends that Complete Prototype cannot bring a claim for unjust enrichment because the parties had an enforceable contract, and unjust enrichment only applies when a contract does not exist. Under Wisconsin law, "[u]njust enrichment is an equitable claim that cannot coexist with a breach of contract claim." *Mohns Inc. v. BMO Harris Bank Nat'l Ass'n*, 2021 WI 8, ¶ 48, 395 Wis. 2d 421, 450, 954 N.W.2d 339, 353; *see also Carroll v. Stryker Corp.*, 658 F.3d 675, 682 (7th Cir. 2011) ("In Wisconsin the quasi-contractual theories of quantum meruit and unjust enrichment are legal causes of action grounded in equitable principles and can be invoked only

---

conversion about the same goods.

in the absence of an enforceable contract."). Because the purchase orders were contracts under which Complete Prototype asserts breach of contract claims, it cannot recover damages for payment of the orders based on unjust enrichment.

But even if the court were to consider the merits of Complete Prototype's unjust enrichment claim, Complete Prototype does not offer evidence from which a reasonable factfinder could conclude that Penda is unfairly retaining a benefit received from Complete Prototype. *See S & M Rotogravure Serv., Inc. v. Baer*, 77 Wis. 2d 454, 460, 252 N.W.2d 913 (1977) (setting out the elements of a claim for unjust enrichment). Complete Prototype's argument on this claim is underdeveloped, but its theory seems to be that the two-million-dollar payment that Penda received from General Motors for Penda's obsolescence claim must have included compensation for Complete Prototype's raw materials and labor. Complete Prototype does not explain the basis for its assertion that Penda's payment from General Motors included compensation for Complete Prototype's work. When discussing this claim, Complete Prototype cites an email in which it refers to General Motor's audit of Complete Prototype's inventory of parts and raw materials, Dkt. 35-6, as well as an email in which Penda said, "Penda recognizes that we owe $166,961 for POs placed but never delivered," Dkt. 35-7.

Based on these citations, Complete Prototype's reasoning seems to be that Penda's payment from General Motors necessarily included compensation for the inventory audited by General Motors because both Penda and General Motors were aware of the inventory of undelivered parts. But this reasoning is speculative. The two million dollar payment that Complete Prototype received from General Motors was significantly less than Penda's full obsolescence claim of more than five million dollars. Complete Prototype provides no basis for its assertion that the payment from General Motors was to credit the parts that Complete

Prototype had in its inventory rather than parts Penda had in inventory or purchase orders that Penda had outstanding with General Motors. Put another way, Complete Prototype does not offer any evidence from which a reasonable factfinder could find that the payment Penda received from General Motors was to compensate Penda for work done by Complete Prototype.

The court will grant summary judgment for Penda on Complete Prototype's claim for unjust enrichment.

**D. Account stated**

Complete Prototype's final claim is for an account stated. Dkt. 3-1, at ¶¶ 25–29. Under Wisconsin law, this type of claim "is essentially a contract claim seeking to enforce an agreement to settle a disputed debt." *Newgard ex rel. Newgard v. Bank of Am.*, 2007 WI App 161, ¶ 12, 303 Wis. 2d 466, 472, 735 N.W.2d 578, 581. To recover on its account stated claim, Complete Prototype must prove the following three elements: (1) an agreement as to a balance due on a disputed claim was reached; (2) Penda promised to pay the balance; and (3) the balance remains unpaid. *Id.*

In its complaint, Complete Prototype identified the statement of the balance due as a spreadsheet identifying a series of invoices totaling $337,497.26. In its opposition brief, Complete Prototype contends that emails in which Penda agreed to a payment plan and an unexecuted "High Desert Payment Agreement" show that Penda acknowledged that it owes Complete Prototype a total of $168,912 for purchase order Nos. 259412 and 260132. Penda contends that the court should grant summary judgment in its favor because Complete Prototype has abandoned the account stated theory it asserted in its complaint and, in any event, has not provided evidence from which a factfinder could find that the parties reached an agreement as to a balance due or that Penda promised to pay any such agreed-upon amount.

9

The court will grant summary judgment to Penda on this claim. The court agrees that Complete Prototype seems to be relying on a different factual basis for this claim than it did in its complaint; "a plaintiff may not amend [its] complaint through arguments in [its] brief in opposition to a motion for summary judgment." *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012). But even if the arguments that Complete Prototype makes in its opposition brief were consistent with the allegations in its complaint, the evidence it cites does not show that the parties reached agreement about a disputed balance. The email correspondence that Complete Prototype cites shows that, in February 2018, Penda agreed to go on a payment plan to pay an outstanding balance owed, but nothing in the correspondence indicates that the payment plan related to order Nos. 259412 and 260132. As for the draft settlement agreement that Complete Prototype cites, the draft is not executed and there is no evidence that either party agreed to it. The parties' correspondence that Complete Prototype cites in its proposed facts (but not its argument on this issue) contains an email in which a representative from Penda said, "Penda recognizes that we owe $166,961 for POs placed but never delivered." Dkt. 35-7. But in that same email Penda was continuing to dispute Complete Protype's request for payment for raw materials, and nothing in the parties' subsequent correspondence shows that Complete Prototype agreed that $166,961 was the balance due.

ORDER

IT IS ORDERED that defendant Penda Corporation's motion for summary judgment, Dkt. 26, is GRANTED. The clerk of court is directed to enter judgment and close the case.

Entered November 22, 2024.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge